# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW MEXICO

IRONSHORE SPECIALTY INSURANCE
COMPANY, Plaintiff

v.                                              Civil Action No. _____

XTO ENERGY, INC., CONCHO RESOURCES,
INC., COG OPERATING, LLC, and
SOUTHWEST ROYALTIES, INC.
_____

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiff, IRONSHORE SPECIALITY INSURANCE COMPANY ("IRONSHORE") files this Complaint for Declaratory Judgment against Defendants XTO ENERGY, INC. ("XTO"), CONCHO RESOURCES, INC. ("Concho"), COG OPERATING, LLC ("COG"), and SOUTHWEST ROYALTIES, INC. ("Southwest") and respectfully states as follows:

### I.     NATURE OF ACTION

1.     Plaintiff, IRONSHORE, is an insurance company that issued certain policies of insurance to XTO. IRONSHORE brings this Complaint for Declaratory Judgment pursuant to 28 U.S.C. §§ 2201, *et. seq.* and Rule 57 of the Federal Rules of Civil Procedure seeking a declaration with respect to the coverage available under insurance policies IRONSHORE issued to XTO for claims made by XTO against its non-operating working interest owners, Concho, COG and Southwest, for indemnification of legal fees and settlement costs arising out of injuries sustained by two employees of an XTO contractor, Air Tech Drilling, Inc. and/or ADR, LLC (collectively "ATD") while they were working on an XTO well identified as the Nash 49H Well located in Eddy County, New Mexico.

1

2. There exists an actual and justiciable controversy among the parties concerning the respective rights, duties, and obligations under and pursuant to the insurance policies IRONSHORE issued to XTO.

3. XTO has made demand against IRONSHORE under the policies IRONSHORE issued to XTO for reimbursement of a proportionate share of settlements XTO made with the underlying personal injury plaintiffs, and for attorney's fees and defense costs XTO incurred in connection with the defense of the underlying action, based upon a contractual obligation contained in a July 12, 1974 Unit Operating Agreement Nash Unit Eddy County, New Mexico (the "Unit Operating Agreement") that allegedly obligates Concho, COG and Southwest, who held non-operating working interests in the Nash 49H well, to pay a proportionate share of the settlements XTO made with the underlying personal injury plaintiffs, and the attorney's fees and defense costs XTO incurred in connection in the defense of the underlying action. XTO has also made demand directly on Concho, COG and Southwest for reimbursement of its settlement with the underlying plaintiffs and its attorney's fees and defense costs.

4. As is more fully set forth herein, IRONSHORE alleges XTO's claims under the Unit Operating Agreement and the policies, and its claims directly against its non-operating working interests in the Nash 49H well, are barred by the New Mexico Oilfield Anti-Indemnity Statute, NMSA § 57-6-2 because the effectively require the non-operating working interests in the Nash 49H well to indemnify XTO for its own negligence and fault, as alleged by the underlying plaintiffs.

5. Alternatively, IRONSHORE contends XTO's claims or any claims that may be asserted in the future by Concho, COG or Southwest to reimburse XTO for its settlement payments, attorney's fees or defense costs are excluded from coverage by the Contractual

2

Liability exclusion contained in the IRONSHORE policies.

6. IRONSHORE has no adequate remedy at law and, therefore, seeks a judicial determination of its rights and duties under New Mexico law and the IRONSHORE policies. A judicial declaration is necessary and appropriate at this time so IRONSHORE and the Defendants may ascertain their respective rights and duties with respect to their indemnity obligations under the Unit Operating Agreement, New Mexico law and the IRONSHORE policies.

7. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332.

8. The amount in controversy in this matter, exclusive of interest and costs, exceeds $75,000.00.

9. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 in that a substantial portion of the events giving rise to the claim occurred in Eddy County, New Mexico.

## II.   PARTIES

10. Plaintiff, IRONSHORE, is a corporation organized and existing under the laws of the State of Arizona with its principal place of business in Scottsdale, Arizona.

11. Defendant, XTO, is a corporation organized and existing under the laws of the State of Delaware with its principal place of business in Fort Worth, Texas. Upon information and belief, at all times pertinent hereto, XTO was the operator of the Nash 49H well located in Eddy County, New Mexico.

12. Defendant, Concho, is a corporation organized under the laws of the State of Delaware with its principal place of business in Midland, Texas. Upon information and belief, at all times pertinent hereto, Concho was a non-operating working interest owner of a fractional share of the Nash 49H well located in Eddy County, New Mexico.

13. Defendant, COG is a limited liability company organized under the laws of the State of Delaware with its principal place of business in Midland, Texas. Upon information and belief, at all times pertinent hereto, COG was a non-operating working interest owner of a fractional share of the Nash 49H well located in Eddy County, New Mexico

14. Defendant, Southwest, is a corporation organized under the laws of the State of Delaware with its principal place of business in Midland, Texas. Upon information and belief, at all times pertinent hereto, Southwest was a non-operating working interest owner of a fractional share of the Nash 49H well located in Eddy County, New Mexico.

### III.    THE POLICIES

15. IRONSHORE issued a Commercial General Liability Policy to XTO bearing policy number 000992501, effective April 1, 2012 to April 1. 2013, with limits of $1,000,000 per occurrence and $2,000,000 in the aggregate. (hereinafter the "IRONSHORE CGL POLICY").  A copy of the IRONSHORE CGL POLICY is attached hereto as **Exhibit A**.

16. Endorsement No. 27, attached to and forming a part of the IRONSHORE CGL POLICY, entitled "Non-Operating Working Interest Partner of Named Insured Additional Insured Endorsement, provides that XTO is not insured under the IRONSHORE CGL POLICY. However, Endorsement 27 further provides that XTO's "co-owners, joint venturers or mining partners in oil and gas operations with [XTO], where required by written contract or operating agreement with [XTO]," are additional insureds under the IRONSHORE CGL POLICY. *See* **Exhibit A**, Endorsement No. 27.

17. Endorsement No. 27 to the IRONSHORE CGL POLICY also provides that any insurance afforded to these additional insureds "shall be limited to the extent required by the written contract or agreement and will be subject to the lesser of the Limits of Liability under

this policy or the Limits of Liability required under the written contract or agreement." *Id.*

18. Endorsement No. 16, attached to and forming a part of the IRONSHORE CGL POLICY provides that the Limits of Insurance ($1,000,000 per occurrence/$2,000,000 in the aggregate) shall apply in excess of a $100,000 Self-Insured Retention, referenced in the policy as the "Retained Limit." *Id.*

19. IRONSHORE also issued an ExcessProtect[SM] Commercial Excess Liability Policy to XTO bearing policy number 000992601, effective April 1, 2012 to April 1. 2013, with limits of $25,000,000 per occurrence, per claim or per loss and $25,000,000 in the aggregate (hereinafter the "IRONSHORE EXCESS POLICY"), which is excess over the limits of liability provided by the IRONSHORE CGL POLICY, the latter of which serves as the Controlling Underlying Policy. A copy of the IRONSHORE EXCESS POLICY is attached hereto as **Exhibit B**.

20. The IRONSHORE EXCESS POLICY provides commercial excess liability insurance coverage and follows the form of the IRONSHORE CGL POLICY, subject to any inconsistent or supplementary terms or conditions contained in the IRONSHORE EXCESS policy's forms or endorsements. Accordingly, like the IRONSHORE CGL POLICY the IRONSHORE EXCESS POLICY only provides coverage to XTO's co-owners, joint venturers or mining partners in oil and gas operations with XTO, where required by written contract or operating agreement with XTO.

## IV.   FACTUAL BACKGROUND

### A. The Underlying Litigation

21. This dispute arises out of an accident involving a flash fire on or about November 8, 2012, at the Nash 49H well, owned and operated by XTO, located in Eddy County, New

Mexico. The accident resulted in severe burn injuries to two (2) employees of ATD, Scott Manley and Jose Betancur. A lawsuit was subsequently filed by Mr. Manley, his wife and minor children against XTO and other defendants seeking damages for the injuries and damages they sustained in the accident. Mr. Betancur, his wife and minor children thereafter intervened in the *Manley* lawsuit alleging the defendants were responsible, in whole or in part, for their injuries and damages. At no time did the Manley or Betancur Plaintiffs name as defendants Concho, COG, or Southwest, which, upon information and belief, held non-operating working interests in the well with XTO when the accident occurred.

22. On May 26-27, 2016, XTO and the other defendants joined in the *Manley* lawsuit mediated the claims asserted by the underlying plaintiffs/intervenors after which the parties entered into a Confidential Full and Final Release and Settlement Agreement.[1]

23. On June 1, 2016, XTO made demand on Concho, COG and Southwest under the Unit Operating Agreement for payment of a proportionate share of the settlements XTO made with the underlying plaintiffs and for the attorney's fees and defense costs it incurred in defense of the underlying action based upon COG, Concho and Southwest's non-operating working interests in the Nash 49H well. On that date, XTO also made demand under the IRONSHORE CGL POLICY and the IRONSHORE EXCESS POLICY for payment of a proportionate share of the share of the settlements and its attorney's fees and defense costs.[2]

**B.     Unit Operating Agreement**

24. When the November 8, 2012 accident occurred, XTO, as a successor in interest to Mesa Petroleum Co., held a majority working interest in the Nash 49H well and was the operator

---

[1] Due to the confidential nature of the settlement, the Confidential Full and Final Release and Settlement Agreement is not attached.
[2] Due to the confidential nature of the settlement, XTO's June 1, 2016 correspondence is not attached.

of the well in accordance with the Unit Operating Agreement, which obligated XTO to operate, manage and supervise the well activities for the Nash Unit, including the Nash 49H well. The Unit Operating Agreement and acknowledgement of XTO as operator of the Nash Unit are attached hereto as **Exhibits C & D**.

25.     Upon information and belief, on November 8, 2012, and on May 26-27, 2016, COG, a division of Concho, and Southwest participated in the Nash Unit based upon the following non-operating working interests in the Nash 49H well:

- COG/Concho              12.32586%
- Southwest                    3.93389%

26.     The Unit Operating Agreement provides that approved reimbursements for the Nash 49H well are handled in accordance with the procedures outlined in Exhibit "D" attached to the Unit Operating Agreement, which specifies that XTO, as the well Operator, can charge, Concho, COG and Southwest, as non-operating working interests in the well, their proportionate share of the total costs and expenses for the reasonable operation and protection of the well interests. See **Exhibit C** and its attached Exhibit "D."

27.     XTO contracts with various contractors to perform well operations in connection with its duties as an oil and gas operator. **Exhibit "C."** Non-operating working interests have no direct involvement with the operations of the well, and are simply billed for their proportionate share of approved operating costs for the well.

28.     Exhibit "D," Paragraph 8, of the Unit Operating Agreement, entitled "Legal Expense," includes the following as operating costs for the Nash 49H well that are chargeable to the non-operating working interests:

**8. Legal Expense**

All costs and expenses of handling, investigating, and settling litigation· or claims arising by reason of the Joint Operations or necessary to protect or recover the Joint Property, including, but not limited to, attorney's fees, court costs, cost of investigation or procuring evidence and amounts paid in settlement or satisfaction of any such litigation or claims; provided, (a) no charge shall be made for the services of Operator's legal staff or other regularly employed personnel (such services being considered to be Administrative Overhead under Section III), unless agreed to by Operator and Non-Operators, and (b) no charge shall be made for the fees and expenses of outside attorneys unless the employment of such attorneys is agreed to by Operator and Non-Operators.

29. Pursuant to Exhibit "D" Paragraph 8 of the Unit Operating Agreement, XTO made demand for reimbursement on Concho, COG and Southwest for a proportionate share of XTO's settlement with Mr. Manley and Mr. Bentacur and for a proportionate share of its attorney's fees and defense costs.

## V. REQUEST FOR DECLARATORY RELIEF

### A. XTO'S DEMAND FOR INDEMNITY IS BARRED BY NEW MEXICO LAW

30. IRONSHORE brings this action to obtain a declaration of its rights and duties under New Mexico law, under the terms of the IRONSHORE CGL POLICY and the IRONSHORE EXCESS POLICY, and under the Unit Operating Agreement because New Mexico law applies to the interpretation of the Unit Operating Agreement, as well as the coverage provided by the IRONSHORE policies. Based on the strong public policy behind the New Mexico Oilfield Anti-Indemnity Statute, the provisions in the Unit Operating Agreement requiring the non-operating working interests to indemnify XTO for settlement costs for the bodily injury of a third party are void and unenforceable as they effectively require the non-working interest owners in the Nash 49H well to indemnify XTO for its negligence and fault as a result of its operation of the well.

31. The New Mexico Oilfield Anti-Indemnity Statute states, in relevant part:

> **§ 56–7–2. Oil, gas or water wells and mineral mines; agreements, covenants and promises to indemnify void**
>
> A. An agreement, covenant or promise, foreign or domestic, contained in, collateral to or affecting an agreement pertaining to a well for oil, gas or water, or mine for a mineral, within New Mexico, that purports to indemnify the indemnitee against loss or liability for damages arising from the circumstances specified in Paragraph (1), (2) or (3) of this subsection is against public policy and is void:
>
> (1) the sole or concurrent negligence of the indemnitee or the agents or employees of the indemnitee;
>
> (2) the sole or concurrent negligence of an independent contractor who is directly responsible to the indemnitee; or
>
> (3) an accident that occurs in operations carried on at the direction or under the supervision of the indemnitee, an employee or representative of the indemnitee or in accordance with methods and means specified by the indemnitee or employees or representatives of the indemnitee.
>
> N.M. Stat. Ann. § 56–7–2(A).

32. XTO's demand to Concho, COG and Southwest, as non-operating working interests in the Nash 49H well, for payment of a proportionate share of XTO's settlement with the underlying plaintiffs and for reimbursement of a proportionate share of XTO's attorney's fees and defense costs, and XTO's demand for reimbursement of such payments, attorney's fees and defense costs under the IRONSHORE policies occurred as a result of XTO's alleged negligence in the operation of the Nash 49H well, during operations conducted by an independent contractor working for XTO and/or during operations carried on at the direction or under the supervision of XTO, in direct contravention of Section 56-7-2 (A) of the New Mexico Oilfield Anti-Indemnity Statute.  XTO therefore seeks reimbursement from Concho, COG and Southwest and indemnification under the IRONSHORE policies for the "sole or concurrent

negligence of" XTO, which is in direct violation of Section 56-7-2 (A)(1) of New Mexico Oilfield Anti-Indemnity Statute.

33. Endorsement 27 to the IRONSHORE CGL POLICY, which also serves as the Controlling Underlying Policy for the IRONSHORE EXCESS POLICY, specifically provides that XTO, which is listed in the IRONSHORE CGL POLICY as the Named Insured, is not an "insured" under the IRONSHORE CGL POLICY.  Endorsement No. 27 provides in pertinent part:

> 1. The Named Insured is not "insured" under this policy. The insurance does not apply to any sums the Named Insured becomes legally obligated to pay as damages because of "bodily injury", "property damage", or "personal and advertising injury", and we have neither the right nor the duty to defend Named Insured against any "suit" seeking these damages.
>
> 2. Section II – Who is an Insured, is deleted in its entirety and replaced with the following:
>
> **SECTION II-WHO IS AN INSURED**
>
> The following entities, only, are insured under this policy:
>
> The Named Insured's co-owners, joint venturers or mining partners in oil and gas operations with the Named Insured, where required by written contract or operating agreement with the Named Insured, and where the Named Insured acts as an operator or agent for same co-owners, joint venturers or mining partners of oil and gas operations. It is further agreed that such insurance as is afforded to these co-owners, joint venturers or mining partners under this paragraph shall be limited to the extent required by written contract or agreement and will be subject to the lesser of the Limits of Liability under this policy or the Limits of Liability required under the written contract or agreement.

34. Because Section 56-7-2 (A) of the New Mexico Oilfield Anti-Indemnity Statute voids the provisions in the Unit Operating Agreement that require non-negligent, non-operating working interests such as Concho, COG and Southwest to indemnify XTO for settlement payments, attorney's fees and defense costs arising out of XTO's own negligence and fault in the

operation of the well, Section 56-7-2(C) of the New Mexico Oilfield Anti-Indemnity Statute also invalidates provisions in the IRONSHORE policies to the extent they support the unenforceable obligation:

> C. A provision in an insurance contract indemnity agreement naming a person as an additional insured or a provision in an insurance contract or any other contract requiring a waiver of rights of subrogation or otherwise having the effect of imposing a duty of indemnification on the primary insured party that would, if it were a direct or collateral agreement described in Subsections A and B of this section, be void, is against public policy and void.

### B. XTO'S CLAIM AGAINST IRONSHORE IS BARRED BY THE CONTRACTUAL LIABILITY EXCLUSION

35. The Commercial General Liability Coverage Form attached to and forming a part of the IRONSHORE CGL POLICY contains a Contractual Liability exclusion which provides, in relevant part, as follows:

> 2. Exclusions
>
> This insurance does not apply to:
>
> ***
>
> b. Contractual Liability
>
> "Bodily injury" or "property damage" for which the insured is obligated to pay damages by reason of the assumption of liability in a contract or agreement. This exclusion does not
> apply to liability for damages:
>
> (1) That the insured would have in the absence of the contract or agreement; or
>
> (2) Assumed in a contract or agreement that is an "insured contract", provided the "bodily injury" or "property damage" occurs subsequent to the execution of the contract or agreement. Solely for the purposes of liability assumed in an "insured contract", reasonable attorney fees and necessary litigation expenses incurred by or for a party other than an insured are

> deemed to be damages because of "bodily injury" or "property damage", provided:
>
> (a) Liability to such party for, or for the cost of, that party's defense has also been assumed in the same "insured contract"; and
>
> (b) Such attorney fees and litigation expenses are for defense of that party against a civil or alternative dispute resolution proceeding in which damages to which this insurance applies are alleged.

36. The IRONSHORE CGL POLICY defines "insured contract," in pertinent part, as follows:

> f.   That part of any other contract or agreement pertaining to your business (including an indemnification of a municipality in connection with work performed for a municipality) under which you assume the tort liability of another party to pay for "bodily injury" or "property damage" to a third person or organization.  Tort liability means a liability that would be imposed by law in the absence of any contract or agreement.

37. If the Unit Operating Agreement is deemed to be an "insured contract" and therefore an exception to the Contractual Liability exclusion contained in the IRONSHORE CGL POLICY, by definition the Unit Operating Agreement is an agreement that obligates Concho, COG and Southwest to assume the tort liability of XTO and indemnify XTO for its own negligence and fault, which is directly contrary to and prohibited by the New Mexico Oilfield Anti-Indemnity Statute.

38. If the Unit Operating Agreement is not an "insured contract" as defined by the IRONSHORE CGL POLICY, XTO's demand for reimbursement, or any claims that may be made in the future under the IRONSHORE policies by Concho, COG or Southwest to reimburse XTO for its settlement payments, attorney's fees or defense costs, is barred by the "Contractual Liability" exclusion contained in the IRONSHORE CGL POLICY.

### C.  LIMITS OF INSURANCE

39. The Unit Operating Agreement provides that the Operator, XTO, will obtain and charge the non-operating working interests for insurance coverage, including:

> 2. General Public Liability Insurance with limits of not less than $250,000 as to any one person, and $500,000 as to any one accident, and Property Damage Liability Insurance with limits of not less than $100,000 for each accident.

40. In the event the New Mexico Oilfield Anti-Indemnity Statute does not bar XTO's claim for reimbursement, and the Contractual Liability exclusion contained in the IRONSHORE CGL POLICY does not exclude coverage for XTO's reimbursement claim, Endorsement 27 to the IRONSHORE CGL POLICY limits the insurance coverage provided by the IRONSHORE policies to $500,000, which is the lesser of the limits of liability contained in the IRONSHORE CGL POLICY and the amount of liability insurance required under the Unit Operating Agreement.

41. IRONSHORE is entitled to limit its liability for insurance coverage, if any, to $500,000.00.

### VI.   PRAYER FOR DECLARATORY RELIEF

42. Pursuant to the Declaratory Judgment Act, 28 U.S.C. 2201-2202, and Rule 57 of the Federal Rules of Civil Procedure, IRONSHORE seeks the following judicial declarations:

> A. The New Mexico Oilfield Anti-Indemnity Statute bars XTO's demand under the Unit Operating Agreement that Concho, COG and Southwest reimburse XTO for a proportionate share the settlement payments XTO made to the underlying plaintiffs and for the attorney's fees and defense costs XTO incurred in defense of the underlying litigation because the Unit Operating Agreement requires XTO's non-

13

operating working interests in the Nash 49H well to indemnify XTO for its own negligence and fault in contravention of the New Mexico Oilfield Anti-Indemnity Statute;

B.      The New Mexico Oilfield Anti-Indemnity Statute bars XTO's claim under the IRONSHORE CGL POLICY and the IRONSHORE EXCESS POLICY and any such claims that may be asserted in the future under the IRONSHORE policies by Concho, COG or Southwest, for reimbursement of a proportionate share of the settlement payments XTO paid to the underlying plaintiffs and/or for the attorney's fees and defense costs XTO incurred in defense of the underlying action because the Nash Unit Operating Agreement requires XTO's non-operating working interests in the Nash 49H well to indemnify XTO for its own negligence and fault in contravention of the New Mexico Oilfield Anti-Indemnity Statute;

C.      Alternatively, the Contractual Liability exclusion contained in the IRONSHORE CGL POLICY excludes coverage for XTO's claim and for any claims that may be asserted in the future by Concho, COG or Southwest to reimburse XTO for its settlement payments, attorney's fees or defense costs;

D.      In the event the New Mexico Oilfield Anti-Indemnity Statute does not bar XTO's claim for reimbursement of a proportionate share of the settlement payments XTO paid to the underlying plaintiffs and the attorney's fees and defense costs XTO incurred in defense of the

underlying litigation or any such claims that may be asserted in the future by Concho, COG or Southwest to reimburse XTO for its settlement payments, attorney's fees or defense costs, and the Contractual Liability exclusion contained in the IRONSHORE CGL POLICY does not exclude coverage for these claims, $500,000 is the maximum amount recoverable under the IRONSHORE CGL POLICY for such claim(s).

**WHEREFORE**, the premises considered, IRONSHORE prays that its Complaint for Declaratory Judgment be deemed good and sufficient; that the Defendants be cited to appear and answer, all and singular, the allegations contained therein; and that after due proceedings had, there be judgment herein in favor of IRONSHORE and against the Defendants as prayed for herein. IRONSHORE further prays for all such general and equitable relief as the justice of the cause may require and this Honorable Court may grant.

        Respectfully submitted,

        STIFF, KEITH & GARCIA, LLC

By   /s/ John S. Stiff  
John S. Stiff, Esq.
400 Gold Avenue, SW, Suite 1300
Albuquerque, New Mexico 87102
Phone: (505) 243-5755
Fax:       (505) 243-5855
E-mail:jstiff@stifflaw.com
*Attorney for Plaintiff*