**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW MEXICO**

IRONSHORE SPECIALTY INSURANCE
COMPANY, Plaintiff

v.                                                              Case No. 2:16-cv-00972-CG-GJF

XTO ENERGY, INC., CONCHO RESOURCES,
INC., COG OPERATING, LLC, and
SOUTHWEST ROYALTIES, INC.

---

### OPPOSITION OF IRONSHORE SPECIALTY INSURANCE COMPANY TO TO DEFENDANT XTO ENERGY, INC.'S MOTION TO DISMISS (Rec. Doc. 20)

MAY IT PLEASE THE COURT:

Plaintiff, IRONSHORE SPECIALTY INSURANCE COMPANY ("Ironshore"), submits this Opposition to the Motion to Dismiss pursuant to Fed. R. Civ. Proc. Rule 12(b)(6) filed by Defendant, XTO ENERGY SERVICES, INC. ("XTO"), and respectfully requests this Court to deny the motion for the following reasons:

- Ironshore's Complaint for Declaratory Judgment consists of an actual case and controversy concerning claims brought by XTO against Ironshore's insureds Concho Resources, Inc. ("Concho"), COG Operating LLC ("COG") and Southwest Royalties, Inc. ("Southwest") that should be decided by this Court. XTO seeks to become a third-party beneficiary of insurance proceeds from primary and excess liability policies Ironshore issued to XTO that provide coverage to Concho, COG and Southwest, who were XTO's non-working interest owners in an oil well that XTO owned and operated, and has made direct demand on Ironshore and its insureds for reimbursement of settlement funds paid to the employees of an XTO contractor who were severely burned as a result of an accident at the XTO well;

1

- The Court's discretion to hear Ironshore's claim against XTO should be exercised because Ironshore's trigger of coverage for XTO's claims for reimbursement of the settlement proceeds depends upon the enforceability of indemnity and insurance provisions contained in a Unit Operating Agreement between XTO, Concho, COG and Southwest, which is covered by and prohibited under the New Mexico Oilfield Anti-Indemnity Statute, NMSA § 57-6-2, as alleged in Ironshore's Complaint for Declaratory Judgment.

## FACTUAL & PROCEDURAL BACKGROUND

Ironshore filed a declaratory judgment action against Defendants, XTO, Concho, COG and Southwest seeking a determination with respect to coverage available under primary and excess insurance policies Ironshore issued to XTO for claims made by XTO against its non-operating working interest owners, Concho, COG and Southwest, for indemnification of legal fees and settlement costs arising out of injuries sustained by two employees of an XTO contractor, Air Tech Drilling, Inc. and/or ADR, LLC (collectively "ATD") on November 8, 2012, while they were working on an XTO well identified as the Nash 49H Well located in Eddy County, New Mexico. (Rec. Doc. 1 at ¶1).

In its Complaint for Declaratory Judgment, Ironshore alleges "XTO has made demand against IRONSHORE under the policies IRONSHORE issued to XTO for reimbursement of a proportionate share of settlements XTO made with the underlying personal injury plaintiffs, and for attorney's fees and defense costs XTO incurred in connection with the defense of the underlying action, based upon a contractual obligation contained in a July 12, 1974 Unit Operating Agreement Nash Unit Eddy County, New Mexico (the "Unit Operating Agreement") that allegedly obligates Concho, COG and Southwest, who held non-operating working interests in the Nash 49H well, to pay a proportionate share of the settlements XTO made with the underlying personal injury

plaintiffs, and the attorney's fees and defense costs XTO incurred in connection in the defense of the underlying action." (Rec. Doc. 1 at ¶ 3).  Significantly, XTO has also made demand directly against Concho, COG, and Southwest for reimbursement of a proportionate share of its settlements with the underlying plaintiffs and for the attorney's fees and defense costs XTO incurred in connection with its defense of the underlying action.[1]

Ironshore alleges XTO's claims for reimbursement under the Unit Operating Agreement and the Ironshore policy, and its claims directly against its non-operating working interests in the Nash 49H well, are barred by the New Mexico Oilfield Anti-Indemnity Statute, NMSA § 57-6-2 because XTO's claims effectively require the non-operating working interests in the Nash 49H well to indemnify XTO for its own negligence and fault. (Doc. No. 1 ¶4). Only in the alternative does Ironshore contend XTO's claims or any claims for reimbursement that may be asserted against Ironshore in the future by Concho, COG or Southwest to reimburse them for any payments they make to XTO for the settlements, attorney's fees or defense costs XTO incurred are excluded from coverage by the Contractual Liability exclusion contained in the Ironshore policies. (Doc. No. 1 ¶ 5).

In sum, the declaratory judgment Ironshore seeks regarding the applicability of the New Mexico Oilfield Anti-Indemnity Statute or the coverage determination sought by Ironshore inextricably involves XTO.  XTO procured the policies on behalf of its non-operating working interest partners; XTO settled a lawsuit involving injuries resulting from its operations of the Nash 49H Well; and now XTO has made demand against Ironshore and its insureds for reimbursement of this settlement, thus seeking indemnity for its own negligence in contravention of New Mexico law.  For these reasons, XTO should not be dismissed as a party to this case.

---

[1] Due to the confidential nature of the settlement, XTO's correspondence asserting these demands are not attached.  It should be noted, however, that XTO has not disputed that these demands were made.

## **LEGAL STANDARD**

On a motion to dismiss, the Court must "accept as true all of all well-pleaded facts in the complaint and view them in the light most favorable to the plaintiff. *Burnett v. Mortgage Electronic Registration Systems, Inc.*, 706 F.3d 1231, 1236 (10th Cir. 2013)(citing *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir. 2009)). To survive a motion to dismiss, the complaint must state a claim that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955 (2007). That is, "[f]actual allegations must be enough to raise a right to relief above the speculative level, ... on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555, 127 S.Ct. at 1965 (citations omitted).

## **DECLARATORY JUDGMENT ACT**

The Federal Declaratory Judgment Act, 28 U.S.C. § 2201, provides a unique procedural remedy to the litigants that choose to utilize it. Section 2201(a) provides:

> In a case of actual controversy within its jurisdiction ... any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such.

28 U.S.C. § 2201(a). Ironshore filed its Complaint for Declaratory Judgment on August 30, 2016. (Rec. Doc. 1). Given the posture of the demand, Ironshore represented that there was an absence of an adequate remedy at law and sought a judicial declaration of its indemnity obligations under the policies it issued to XTO, Concho, COG and Southwest, under New Mexico law and under the Unit Operating Agreement. (Rec. Doc. 1 at ¶ 6). No party disputes this Court's diversity jurisdiction. (*See* Rec. Doc. 1 at ¶¶ 7, 8, 10-14).

In sum, XTO has made a demand under the Ironshore policies and its insureds. The determination of Ironshore's duty to indemnify XTO, if any, in the first instance, encompasses this

4

Court's determination of the legality of the Unit Operating Agreement's indemnity and insurance provisions under New Mexico law. A judicial determination of Ironshore's respective rights and duties necessarily involves XTO and the relationship between co-defendants, XTO, as the operator of the Nash Unit, and Ironshore's insureds. Accordingly, there is no question that Ironshore may be granted relief by this Court, and XTO's motion to dismiss should be denied.

**I.       There Is an Actual Case or Controversy Between Ironshore and XTO**

It is well settled that an "actual controversy" within the meaning of the Declaratory Judgment Act exists between Ironshore and XTO because XTO has made demand on Ironshore and its purported insureds for indemnity of settlement funds paid by XTO. *See Maryland Cas. Co. v. Pacific Coal & Oil Co.,* 312 U.S. 270, 61 S.Ct. 510 (1941); *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 57 S.Ct. 461 (1937). The Supreme Court set forth the standard for jurisdiction in a declaratory judgment action which perfectly fits the scenario presented by Ironshore in its well plead Petition:

> [T]hat the dispute be definite and concrete, touching the legal relations having adverse legal interests and that it be real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising what the law would be under a hypothetical state of facts.

*Aetna Life*, 300 U.S. at 240, 57 S.Ct. 461; *see also MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 S.Ct. 764 (2007) (rejecting the requirement of "reasonable apprehension of suit" and reinstating the test in *Aetna Life*, *supra*); *Surefoot LC v. Sure Foot Corp.*, 531 F.3d 1236, 1242 (10th Cir. 2008).

The determination of whether there exists an 'actual controversy' between two parties "has never been decided by a judicial wager on the chances the parties will (imminently or otherwise) sue one another; rather, it has always focused on the underlying facts, assessing whether they suggest an extant controversy between the parties or whether instead they merely call on [a court]

5

to supply an advisory opinion about a hypothetical dispute." *Surefoot,* 531 F.3d at 1242. "It is the nature of the controversy, not the method of its presentation or the particular party who presents it, that is determinative." *Id*. at 1245 (citing *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 244 57 S.Ct. 461, 81 L.Ed. 617 (1937)).

Significantly, the Tenth Circuit Court of Appeals, in holding that a person with a contingent interest in policy proceeds is appropriately compelled to defend a declaratory action, has recognized that:

> In declaratory actions brought to determine coverage under insurance policies issued to protect the insured against liability to third persons, third persons asserting such liability have been held to be proper parties to a declaratory judgment proceeding, although their claims against the insurer are contingent upon recovery of a judgment against the insured.

*Franklin Life Ins. Co. v. Johnson*, 157 F.2d 653, 658 (10th Cir. 1946) (citations omitted). The *Franklin Life* Court found that it could discern no difference between a contingent beneficiary of a life insurance policy and an injured person seeking liability under a casualty insurance policy, in the context of a declaratory action. Simply put, there is no requirement that the party be a necessary and indispensable party. Instead, one of the prime purposes of the Declaratory Judgment Act is to meet situations like those presented by this case where questions of law and fact relating to the **threshold issue** of liability for any payment by Concho, COG and Southwest to XTO under New Mexico law would likewise answer the question of coverage under the insurance policy.

XTO does not dispute that it has demanded reimbursement under an insured contract from Ironshore's alleged insureds or that XTO has similarly demanded insurance proceeds under the policies directly from Ironshore. There is no question that the sums demanded are substantial and more than sufficient to satisfy diversity jurisdiction and there is no other pending litigation.

Ironshore seeks a determination of its obligations to its insureds, which necessarily hinges

on the enforceability of the insureds' obligations to XTO.  In order to have these obligations fully, finally and immediately declared, Ironshore has opted to invoke the declaratory judgment process. Accordingly, there is sufficient controversy and adverse legal interest between XTO and Ironshore supporting the fact that XTO should not be dismissed from this action.

on the enforceability of the insureds' obligations to XTO.  In order to have these obligations fully, finally and immediately declared, Ironshore has opted to invoke the declaratory judgment process. Accordingly, there is sufficient controversy and adverse legal interest between XTO and Ironshore supporting the fact that XTO should not be dismissed from this action.

**II.     XTO Is An Interested, If Not Necessary, Party To This Declaratory Action**

Ironshore's Complaint for Declaratory Judgment explains how this Court's ruling on the Unit Operating Agreement and its obligations to provide XTO indemnity and insurance would provide "complete relief" among the parties to the case. *See Salt Lake Tribune Publishing Co. LLC v. AT&T Corp.*, 320 F.3d 1081, 1097 (10th Cir. 2008).  "'Ordinarily, in an action for a declaratory judgment, **all persons interested in the declaration are necessary parties.**'" *Franklin Life*, 157 F.2d at 658 (quoting *Utica Mutual Ins. Co. v. Hamera*, 162 Misc. 169, 292 N.Y.S. 811, 816 (1936)) (emphasis added).  Undoubtedly, a declaration as to the obligations of Ironshore under the policies, the Unit Operating Agreement and New Mexico law necessarily affects the claims made by XTO against Ironshore and its insureds.  Moreover, the questions of law and fact relating to the non-operating working interests' liability for indemnity are common to both XTO and Ironshore's insureds.  Consequently, XTO, the party seeking reimbursement from Ironshore and its insureds, is an interested and proper party to the action.  *Id.*; *See* Fed. R.Civ. Proc. Rule 19 and 20. Accordingly, XTO's argument that it should be severed from this case and dismissed because maintenance of suit against it is in contravention of Fed. R. Civ. Proc. Rule 19 is without merit.

**III.    The Court Should Exercise its Discretion to Maintain the Complaint Against XTO**

Ironshore urges this Court to maintain the entire action under the Declaratory Judgment Act. Reference to the United States Court of Appeals for the Tenth Circuit's list of factors to consider in evaluating whether to proceed with a declaratory judgment action all point in favor of

7

this Court denial of XTO's Motion to Dismiss.  Those factors, known as the *Mhoon* factors, include:

> (1) whether a declaratory action would settle the controversy; (2) whether it would serve a useful purpose in clarifying the legal relations at issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race to res judicata"; (4) whether use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*St. Paul Fire and Marine Ins. Co. v. Runyon*, 53 F.3d 1167, 1169 (10th Cir. 1995) (citing *State Farm Fire & Casualty Co. v. Mhoon*, 31 F.3d 979, 983 (10th Cir. 1994)).

The application of the *Mhoon* factors require no balancing of competing interests because all of the factors support this Court maintaining this action against all defendants.  First, Ironshore's declaratory judgment action is designed to settle the entire controversy between Ironshore and all defendants.  Second, the court's ruling would provide an efficient and fair adjudication of the legal relationship and obligations between and among the insurer, Ironshore; the insureds, Concho, COG, and Southwest; and, the purported third-party beneficiary to the insurance contract, XTO.  Third, the remedy sought is not used for "procedural fencing" and is not an attempt to forum shop. Fourth, no tension exists between federal and state court jurisdiction because no other lawsuits are pending.  Fifth, given the circularity of indemnity between the three parties, no other alternative remedy exists to resolve all issues that is better or more effective. Finally, and most significantly, XTO admits that Ironshore's action is proper against the other co-defendants and should not be dismissed, but fails to point to any case that supports the severance of XTO given its contingent interest in the outcome of the litigation.

The disposition of the first claim in Ironshore's Declaratory Action would settle all legal relations in dispute as between Ironshore and XTO, as well as between Ironshore and its insureds; it will afford relief from uncertainty for all parties; and, it will definitively declare the rights and

obligations of Ironshore to XTO, and to its insureds, for all future purposes.  Undoubtedly, XTO has both an interest and a stake in the outcome of the instant litigation.  Accordingly, it would be inappropriate to dismiss XTO from this action.

## **CONCLUSION**

Clearly, there is a justiciable controversy between XTO and Ironshore, and XTO should be a party to this action because XTO has a direct interest in the outcome of Ironshore's Complaint.  Indeed, XTO should be considered a necessary party hereto under the jurisprudence of the Tenth Circuit Court of Appeals and the underlying purpose of the Declaratory Judgment Act.  The factual allegations of Ironshore's well-pleaded complaint far exceed the plausibility threshold required to survive a motion to dismiss.  For all of the foregoing reasons, XTO's Motion to Dismiss (Rec. Doc. 20) should be denied.

Respectfully submitted:

ZAUNBRECHER TREADAWAY BOLLINGER, LLC

/s/*Randell E. Treadaway*
RANDELL E. TREADAWAY (Admitted Pro Hac Vice)
406 N. Florida Street, Suite 2
Covington, LA  70433
Telephone: (985) 871-8787
Telefax:     (985) 871-8788
Email: randy@ztlalaw.com

and

STIFF, KEITH & GARCIA, LLC
John S. Stiff, Esq.
400 Gold Avenue, SW, Suite 1300
Albuquerque, New Mexico 87102
Phone: (505) 243-5755
Fax:             (505) 243-5855
E-mail:jstiff@stifflaw.com
***Attorneys for Plaintiff, Ironshore Specialty Insurance Company***

## **CERTIFICATE OF SERVICE**

I hereby certify that on January 30, 2017, a copy of the foregoing pleading was filed electronically with the Clerk of Court using the CM/ECF system, which provides service on all counsel of record.

>*/s/Randell E. Treadaway*
>Randell E. Treadaway